UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDRA LEE JACOBSON,<br><br>   Plaintiff,<br><br>  v.<br><br>PERSOLVE, LLC, et al.,<br>       Defendants. | Case No.  14-CV-00735-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 96 |

   Plaintiff Sandra Lee Jacobson ("Plaintiff") brings this putative class action against Defendants Persolve, LLC, d/b/a Account Resolution Associates ("Persolve") and Stride Card, LCC ("Stride Card") (collectively, "Defendants") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.* ("RFDCPA"). Plaintiff contends that Persolve and Stride Card engaged in a routine practice of sending initial debt collection notices that did not disclose to the reader the name of the creditor to whom the debt was owed. ("FAC"), ECF No. 15, ¶ 23. Before the Court is Plaintiff's motion for class certification. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS in part and DENIES in part Plaintiff's motion for class certification.

## I.  BACKGROUND

### A.  Factual Background

This putative class action arises out of Persolve's attempt to collect consumer debts from Plaintiff and others similarly situated. Plaintiff alleges that she incurred a consumer debt issued by Wells Fargo Bank, N.A. ("the debt") at an unknown time for personal, family, or household purposes. FAC ¶ 12. The debt was later sold, assigned, or otherwise transferred to Stride Card. *Id.* ¶ 13. Stride Card then allegedly consigned, placed, or otherwise assigned the debt to Persolve for collection. *Id.* ¶ 14.

Plaintiff alleges that on March 4, 2013, Persolve sent an initial collection notice to Plaintiff on behalf of Stride Card. *Id.* ¶ 15; ECF No. 1-1. The collection notice listed Wells Fargo as the "Original Creditor." ECF No. 1-1. The notice did not identify Stride Card, which was the current owner and creditor of Plaintiff's debt. FAC ¶ 21. Plaintiff alleges that Persolve sends similar collection notices to consumers that do not contain the name of the current creditor when Persolve collects defaulted debts. *Id.* ¶ 23. Furthermore, Plaintiff alleges Stride Card is vicariously liable for the acts of Persolve as the current creditor, and directly liable as a "debt collector." *Id.* ¶ 10.

### B.  Procedural History

Plaintiff filed her Original Complaint on February 18, 2014. ECF No. 1. Persolve filed an answer to Plaintiff's Original Complaint on March 18, 2014. ECF No. 10. On March 26, 2014, Persolve served Plaintiff's counsel with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. ECF No. 21-3. Under the Offer of Judgment, Persolve proposed to pay Plaintiff $3,500.00 to resolve her individual claim. *Id.* at 1. The Offer of Judgment further provided that Plaintiff would receive reasonable attorneys' fees and costs incurred in the action, with the amount to be determined by the Court if the parties were unable to agree. *Id.* at 2. Plaintiff filed the Motion to Strike Persolve's Offer of Judgment on April 4, 2014. ECF No. 21. Persolve filed an Opposition to Plaintiff's Motion to Strike on April 18, 2014. ECF No. 25. On the same day, Persolve filed a request for Judicial Notice in support of its opposition. ECF No. 26. Plaintiff filed a Reply in Support of the Motion to Strike Persolve's Offer of Judgment on April 25, 2014. ECF No. 28. On

August 19, 2014, the Court denied Plaintiff's motion to strike Persolve's offer of judgment. ECF No. 55.

Plaintiff filed the FAC on March 28, 2014, ECF No. 15, which Persolve answered on April 14, 2014, ("Persolve Answer") ECF No. 24. Persolve's Answer asserted twelve affirmative defenses: (1) failure to state a claim; (2) statute of limitations; (3) bona fide error; (4) no material misrepresentation; (5) equitable defenses; (6) no intentional or reckless conduct; (7) mitigation of damages; (8) offset; (9) no declaratory relief; (10) no class action; (11) not a debt collector as defined in the FDCPA; and (12) reservation of rights. *Id.* at 8–10. In response, Plaintiff filed a Motion to Strike Persolve's Affirmative Defenses on May 5, 2014. ECF No. 29. Persolve opposed the motion on May 19, 2014, ECF No. 33, and also submitted a Request for Judicial Notice in support of its opposition, ECF No. 34. Persolve attached a Proposed Amended Answer to its opposition, in which Persolve waived all but four of its affirmative defenses. ECF No. 33-1. Plaintiff filed a Reply in Support of the Motion to Strike Persolve's Affirmative Defenses on May 27, 2014, ECF No. 36. On August 19, 2014, the Court granted in part and denied in part Plaintiff's motion to strike affirmative defenses. ECF No. 55. Persolve filed an amended answer to the FAC on September 9, 2014. ECF No. 61.

Stride Card filed an Answer to the FAC on May 15, 2014. ("Stride Card Answer") ECF No. 32. Stride Card's Answer asserts four affirmative defenses: (1) failure to state a claim; (2) bona fide error; (3) good faith; and (4) offset. *Id.* at 9–10. On June 5, 2014, Plaintiff filed a Motion to Strike Stride Card's Affirmative Defenses. ECF No. 40. Stride Card opposed Plaintiff's Motion to Strike on June 19, 2014. ECF No. 43. Also on June 19, 2014, Stride Card filed a Request for Judicial Notice in support of its opposition. ECF No. 44. Plaintiff filed a Reply in Support of the Motion to Strike Stride Card's Affirmative Defenses on June 25, 2014. ECF No. 47. On August 19, 2014, the Court granted in part and denied in part Plaintiff's motion to strike affirmative defenses. ECF No. 55.

On February 23, 2015, Plaintiff filed a motion requesting leave to file a second amended class action complaint. ECF No. 87. Plaintiff filed a motion to shorten time on hearing Plaintiff's

3
Case No.14-CV-00735-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

motion requesting leave to file a second amended class action complaint on February 25, 2015, which the Court denied on March 3, 2015. ECF Nos. 90, 91. Defendants filed an opposition to Plaintiff's motion for leave to file a second amended class action complaint on March 9, 2015. ("Opp."), ECF No. 92. Plaintiff replied on March 16, 2015. ("Reply"), ECF No. 93. On May 1, 2015, the Court denied Plaintiff's motion requesting leave to file a second amended class action complaint. ECF No. 106.

On April 15, 2015, Plaintiff filed a motion for relief from nondispositive pretrial order of a magistrate judge, ECF No. 97, which the Court denied on April 23, 2015, ECF No. 103.

Plaintiff filed the instant motion for class certification on April 6, 2015. ECF No. 96. Defendants filed an opposition on April 20, 2015. ECF No. 101. Plaintiff filed a reply on April 27, 2015. ECF No. 104.[1]

### C. Class Definition

In her motion for class certification, Plaintiff moves to certify the following class:

> (i) all persons with addresses in California (ii) to whom PERSOLVE sent, or caused to be sent, a notice in the form of Exhibit "1" on behalf of STRIDE CARD (iii) in an attempt to collect an alleged debt originally owed to Wells Fargo Bank, N.A. (iv) which was incurred primarily for personal, family, or household purposes, (v) which were not returned as undeliverable by the U.S. Post Office (vi) during the period one year prior to the date of filing this action through the date of class certification.

Mot. at 1. Plaintiff seeks to certify a "hybrid" class under both Rule 23(b)(3) and Rule 23(b)(2).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of distinct requirements that Plaintiff must meet before the Court may certify a class. Plaintiff must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous

---

[1] The parties also filed administrative motions to seal in connection with their class certification briefing. *See* ECF Nos. 96, 100. The Court addresses the parties' sealing motions in a separate order.

4
Case No.14-CV-00735-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

In addition to meeting the requirements of Rule 23(a), the Court must also find that Plaintiff has satisfied "through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001))). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify a class. *Zinser*, 253 F.3d at 1186.

### III.   DISCUSSION

Plaintiff seeks to certify a California class of individuals who received allegedly illegal debt collection letters from Defendants during the class period under both Rule 23(b)(3) and Rule

23(b)(2) as a "hybrid" class. The Court begins by addressing the requirements for class certification under Rule 23(a) before turning to the requirements for class certification under Rule 23(b)(3) and Rule 23(b)(2).

### A. Rule 23(a) Requirements

Plaintiff bears the burden to show that the proposed class satisfies each requirement under Rule 23(a). Here, Defendants do not contest that Plaintiff has satisfied Rule 23(a)'s requirements. Nonetheless, the Court addresses each requirement in turn.

#### 1. Numerosity

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977).

Plaintiff contends that "at least 469 persons" received the allegedly defective collection letter during the proposed class period. Mot. at 3 (quoting Persolve, LLC's Responses to Second Set of Requests for Admissions, App'x 3 to Mot.). Moreover, Defendants do not dispute the numerosity of the proposed class. As Plaintiff contends that it is beyond dispute that the proposed class numbers well over forty and joinder would be impracticable, the Court finds that the numerosity requirement is satisfied. *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *see also Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) ("[V]arious courts have found that the numerosity factor is satisfied if the class comprises 40 or more members . . . .").

#### 2. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same

provision of law." *Dukes*, 131 S. Ct. at 2551. The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality is satisfied by "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–20 (9th Cir. 1998). All questions of fact and law need not be common to satisfy the rule. *Id.* Rather, in deciding whether plaintiffs share a common question with the prospective class, the named plaintiffs must share at least one question of fact or law with the prospective class. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citation omitted); *see Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact.").

Here, Plaintiff alleges that each proposed class member received the same collection letter from Defendants. Each letter is allegedly defective under the FDCPA and the RFDCPA because the letter failed to identify the name of the creditor to whom the debt was owed. Defendants do not contest that the determination of whether Defendants' form letter violates the FDCPA and the RFDCPA constitutes a common question of law that satisfies Rule 23(a)'s commonality requirement. *See, e.g.*, *Gold v. Midland Credit Mgmt.*, No. 13-2019, --- F.R.D. ---, 2014 WL 5026270, at *6 (N.D. Cal. Oct. 7, 2014) (commonality requirement satisfied where all proposed class members received the "same allegedly misleading letter"). As Plaintiff has identified a "common contention" that "is capable of classwide resolution," the Court concludes that Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement.

### 3. Typicality

Under Rule 23(a)(3) the representative party must have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez*, 591 F.3d at 1124 (citations

1  omitted). This requirement is "permissive and requires only that the representative's claims are

2  reasonably co-extensive with those of the absent class members; they need not be substantially

3  identical." *Hanlon*, 150 F.3d at 1020. Reasonably coextensive claims with absent class members

4  will satisfy the typicality requirement, but the class must be limited to "those fairly encompassed

5  by the named plaintiff's claims." *Dukes* at 131 S. Ct. at 2550. "[C]lass certification is

6  inappropriate where a putative class representative is subject to unique defenses which threaten to

7  become the focus of the litigation." *Hanlon*, 976 F.2d at 508 (citations omitted). "The purpose of

8  the typicality requirement is to assure that the interest of the named representative aligns with the

9  interests of the class." *Id*.

10  Here, the parties do not dispute that Plaintiff and each proposed class member allegedly

11  received the same collection letter, and therefore suffered the same alleged injury under the

12  FDCPA and the RFDCPA. Each proposed class member's claims, and Plaintiff's claims, therefore

13  "arise[] from the same course of events, and each class member makes similar legal arguments to

14  prove the defendants' liability." *Rodriguez*, 591 F.3d at 1124. As such, the Court concludes, and

15  Defendants do not contest, that Plaintiff's claims are typical of the claims of the class. *See, e.g.*,

16  *Abels v. JBC Legal Grp. P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) ("Each of the class members

17  was sent the same collection letter as [plaintiff] and each was allegedly subjected to the same

18  violations of the FDCPA. Therefore, this Court concludes that claims of the class representative

19  are typical of the claims of the class.").

20  **4. Adequacy**

21  In the Ninth Circuit, to test the adequacy of a class representative, courts ask two

22  questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

23  class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously

24  on behalf of the class?" *Staton*, 327 F.3d at 957 (citing *Hanlon*, 150 F.3d at 1020).

25  The Court finds Plaintiff to be an adequate class representative. Plaintiff and the proposed

26  class share the same claims and interest in obtaining relief, and Plaintiff is vigorously pursuing

27  relief on behalf of the proposed class. The Court also finds that Plaintiff's counsel has experience

28

in prosecuting consumer protection and FDCPA class actions. *See* ECF Nos. 96-5, 96-6, 96-7 (Declarations of class counsel detailing experience prosecuting consumer protection class actions). Defendants do not dispute that Plaintiff is an adequate class representative.

### 5. Ascertainability

In addition to the "explicit requirements of Rule 23(a)," courts have required plaintiffs seeking to certify Rule 23(b)(3) classes to "demonstrate that an identifiable and ascertainable class exists." *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014). A class is ascertainable if the class is defined with "objective criteria" and if it is "administratively feasible to determine whether a particular individual is a member of the class." *See Wolph v. Acer America Corp.*, No. 09-1314, 2012 WL 993531, at *1–2 (N.D. Cal. Mar. 23, 2012) (certifying a class where "the identity and contact information for a significant portion of these individuals can be obtained from the warranty registration information and through Acer's customer service databases"); *see also Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2011 WL 1225900, at *14 (N.D. Cal. Mar. 31, 2011) (certifying class where "defendants' business records should be sufficient to determine the class membership status of any given individual."); *Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2013 WL 1303100, at *3–4 (N.D. Cal. Mar. 28, 2013) (denying certification where "ascertaining class membership would require unmanageable individualized inquiry").

The parties do not dispute that ascertaining class membership would be relatively straightforward. Defendants have already identified at least 469 putative class members who received the same form letter during the proposed class period. *See* Mot. at 3. In addition to Defendants' business records, Plaintiff's proposed class definition "describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. The Elations Co., LLC*, No. 13-242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) (internal quotation marks omitted). Thus, even if Defendants' business records were arguably insufficient to identify each and every proposed class member, individual class members could identify themselves based on Plaintiff's proposed class

definition. As Plaintiff's proposed class is sufficiently definite to identify putative class members, the Court finds the proposed class sufficiently ascertainable.

### B. Rule 23(b)(3) Damages Class

For a class action to be certified under Rule 23(b)(3), the class representatives must show that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphases added). Defendants do not dispute that Plaintiff has satisfied the predominance requirement, but do dispute whether a class action would be superior. The Court first addresses predominance before turning to superiority.

#### 1. Predominance

Under Rule 23(b)(3), plaintiffs must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3)."The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *Hanlon*, 150 F.3d at 1022. In ruling on a motion for class certification based on Rule 23(b)(3), the district court must conduct a rigorous analysis to determine whether the class representatives have satisfied both the predominance and superiority requirements. *See Zinser*, 253 F.3d at 1186.

In the instant case, Plaintiff contends that there is a "common nucleus of operative fact," because "all class members, by definition, were subjected to Defendants' policy of sending collection letters in the form of Exhibit '1,' which are alleged to violate the FDCPA and/or the RFDCPA." Mot. at 7. Here, the standardized collection letters to proposed class members are at the heart of Plaintiff's FDCPA and RFDCPA claims. As the letters are substantively identical, the

resolution of whether Defendants' practice of sending collection letters that do not identify the current holder of the debt violates the FDCPA and/or RFDCPA will resolve the claims of the entire class. As such, the Court concludes that "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *Hanlon*, 150 F.3d at 1022; *see also Abels*, 227 F.R.D. at 547 (finding predominance requirement satisfied where the defendants sent identical collection letters to each class member). The Court therefore finds that Plaintiff has satisfied the predominance requirement.

### 2. Superiority

A class action brought under Rule 23(b)(3) must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this determination the Court considers: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually a class action is not superior." *Zinser*, 253 F.3d at 1192.

The Court finds that a class action is the most efficient manner in which to adjudicate the proposed class members' claims against Defendants. As discussed above, whether Defendants are liable for violations of the FDCPA and the RFDCPA will turn on the allegedly defective form collection letter sent to each and every member of the proposed class. Rather than litigate each of the 469 proposed class member's claims as to the same questions of law and fact individually, class litigation would efficiently adjudicate the issue of Defendants' liability under the FDCPA and the RFDCPA in one fell swoop. Moreover, as several other courts have recognized, the

FDCPA specifically contemplates class actions for a variety of reasons. For instance, individual claimants are "most likely unaware of their rights under the FDCPA," and "the size of any individual damages claims under the FDCPA are usually so small that there is little incentive to sue individually." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514–15 (N.D. Cal. 2007) (citing *Amchem*, 521 U.S. at 615); *see also Gold*, 2014 WL 5026270, at *9 ("[I]ndividual recovery [under the FDCPA] is small, and resorting to alternative mechanisms would be unduly inefficient."); *see generally* Newberg on Class Actions § 21:29 (discussing FDCPA cases).

In opposition, Defendants do not dispute that individual class members are most likely unaware of their claims or that recoveries are usually too small to incentivize individual suits. Nor do Defendants contest that class litigation would be more efficient than alternative methods. Instead, Defendants contend that Plaintiff cannot show that class litigation is superior because Defendant Persolve, LLC has a negative net worth and class litigation would result in zero recovery for class members.[2] As to Defendant Stride Card, Defendants contend that any recovery would be de minimis because Stride Card's net worth is less than $35,000.[3] Opp. at 7. Under the FDCPA, individual plaintiffs can recover actual damages and up to $1,000 in additional damages. 15 U.S.C. § 1692k(a)(1)–(2)(A). In a class action under the FDCPA, each named plaintiff may seek up to $1,000 in additional damages, but the class recovery cannot "exceed the lesser of $500,000 or 1 per centum of net worth of the debt collector." *Id.* § 1692k(a)(2)(B). According to Defendants, because Defendants have little or no net worth, class litigation is not superior to individual litigation, as 1 percent of Defendants' negative or de minimis net worth would result in little or no recovery for the class. The Court finds this argument unpersuasive for two reasons.

---

[2] The parties dispute whether Defendant Persolve, LLC's net worth should be calculated as the net worth of the separate sub-units ("Persolve, LLC-Legal-Series 2" and "Persolve, LLC-Legal-Series 1"). For purposes of this motion, this dispute is ultimately immaterial as Defendants argue that even the combined net worth of both sub-units is apparently negative.

[3] Defendants also argue that Stride Card's net worth is irrelevant to class certification because Stride Card is not a "debt collector" under the FDCPA. Whether or not Stride Card is a "debt collector," is an issue better resolved at summary judgment, as that argument goes to Stride Card's liability, not the appropriateness of class certification. Stride Card's status as a "debt collector" is of limited relevance to whether Plaintiff has satisfied Rule 23, and the Court declines to delve into the merits of Plaintiff's claim against Stride Card at this juncture. *See Amgen*, 133 S. Ct. at 1195.

First, Plaintiff disputes whether Defendant Persolve's net worth is actually negative.[4] Plaintiff contends that Defendant Persolve has obtained 106 judgments in Santa Clara County with a total face value of over $1.2 million dollars between January 2012 and March 2015. *See* Reply at 4 (citing ECF Nos. 97-8, 97-9, 97-10, 97-11, 97-12, 97-12). According to Plaintiff, these judgments can be sold for value and are "far more collectable than a bare receivable." Reply at 4. Moreover, while the Court conducts a "rigorous analysis" at the class certification stage, such analysis does not require that Plaintiff provide an exact damages calculation at this stage. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (holding that damages "[c]alculations need not be exact" for class certification); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2013 WL 5391159, at *6–7 (N.D. Cal. Sept. 19, 2013) ("[N]either Comcast nor any other precedent requires the [plaintiffs] to provide exact calculations of their damages at the class certification stage."). Here, Plaintiff has introduced evidence indicating that Defendant Persolve has acquired substantial assets. Accordingly, at this stage the Court is not persuaded that Defendants' professed negative net worth would render a class action inferior to individual litigation.

Second, as Plaintiff correctly notes, the likelihood of de minimis class recovery under the FDCPA is not a bar to class certification. While the Ninth Circuit has not explicitly addressed de minimis recoveries in the FDCPA context, the Court finds the Seventh Circuit's reasoning in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344–45 (7th Cir. 1997), to be persuasive. The Seventh Circuit explained:

> [W]e believe that a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this

---

[4] Plaintiff further argues that Defendant Persolve has shifted assets and liabilities between related entities in order to render judgment proof the entities that might be subject to suit. *See* Reply at 3–4. However, the Court denied Plaintiff's motion for leave to file a second amended complaint adding theories of alter ego liability and additional defendants to this action. Plaintiff's alternative theories are therefore not relevant to the instant motion.

> problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.
>
> True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Id.*; *see also Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464 (S.D.N.Y. 2007) ($ 2.50 per class member); *Warcholek v. Medical Collections Sys., Inc.*, 241 F.R.D. 291, 295–96 (N.D. Ill. 2006) (certifying 23(b)(3) FDCPA class where defendant claimed negative net worth).

In *Mace*, the Seventh Circuit concluded that even a recovery of only $ 0.28 per class member would not necessarily bar class certification. 109 F.3d at 344. Relying on similar logic, district courts in this circuit have certified FDCPA class actions where the estimated recovery per class member ranged from $ 0.00000111 to $11.28. *See del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 595–96 n.9 (N.D. Cal. 2008) ($ 0.00000111 per class member); *Abels*, 227 F.R.D. at 546–57 ($ 0.25 per class member); *Bogner v. Masari Investments, LLC*, No. 8-1511, 2010 WL 2595273, at *2 (D. Ariz. June 24, 2010) (Docket No. 60, $ 11.28 per class member).

In opposition, Defendants rely on *Kohlenbrener v. Dickinson*, No. 94-4696, 1996 WL 131736, at *2 (N.D. Ill. Mar. 15, 1996), but that case is distinguishable. In *Kohlenbrener*, the court denied class certification where the plaintiff had failed to adduce any "proof that any of the defendants in th[e] case ha[d] a positive net worth." *Id.* Here, in contrast, Plaintiff has put forth evidence of at least $1.2 million dollars in assets. Defendants also cite *Bryant v. Bonded Account Serv./Check Recovery, Inc.*, 208 F.R.D. 251 (D. Minn. 2000), but the Court finds *Bryant* unpersuasive. In *Bryant*, the court concluded that a class recovery of $17,500, or $100 per class member, was insufficient where the 175 absent class members could each recover up to $1,000 in individual actions. *Id.* at 260–61. The *Bryant* court did not consider the hurdles individual plaintiffs might face, including their lack of knowledge of existing claims, the possibility of smaller recoveries, and the difficulty of finding counsel. *See id.* Instead, the *Bryant* court assumed

14
Case No.14-CV-00735-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

that the difference between certifying and not certifying an FDCPA class was the award of $17,500 for a class or $175,000 in individual claims. The Court is not persuaded, however, that denying class certification here would result in 459 plaintiffs bringing individual claims. *See, e.g.*, *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 54–55 (D. Conn. 2000) (concluding that "the vast majority, if not all, of those potential plaintiffs would fail to pursue" individual FDCPA claims if the court did not certify a class). FDCPA class actions exist precisely because individual claims are unlikely to be brought and aggregating claims incentivizes suits that produce the "deterrent and curative effect of eliminating abusive collection practices intended by Congress." *Id.*; *see also Mace*, 109 F.3d at 344.

Furthermore, mandatory notice and opt-out provisions under Rule 23(c)(2) will protect the interests of those proposed class members that may wish to pursue individual claims. *See* Fed. R. Civ. P. 23(c)(2); *Warcholek*, 241 F.R.D. at 296. While Defendants contend that a class should not be certified if a high number of opt-outs are likely, Defendants have submitted no evidence indicating such opt-outs are likely and have not explained why the Court should expect many opt-outs. To the contrary, other courts have concluded that the small individual recoveries and difficulties of finding counsel willing to take on individual FDCPA claims on a contingency basis make individual claims unlikely. *See, e.g.*, *Mace*, 109 F.3d at 344–45; *Macarz*, 193 F.R.D. at 54–55. Similarly, while the Court acknowledges the possibility that attorney's fees may be greater than the class recovery, such an outcome is not necessarily at odds with the underlying goals of the FDCPA. As the *Mace* court recognized, the FDCPA provides for attorney's fees because attorneys would otherwise have little incentive to take such cases, and the fees provision "makes the class action more likely to proceed, thereby helping to deter future violations." 109 F.3d at 344. Here, the Court is not persuaded that a hypothetical attorney's fees request by Plaintiff's counsel renders the proposed class inferior to alternative methods of litigation.

Ultimately, the "unfortunate reality . . . that most of Defendant's . . . FDCPA violations would probably go unnoticed absent this lawsuit" must be balanced against the possibility that any class recovery may be relatively minimal. *Kalish*, 246 F.R.D. at 464–65. In light of the probability

that most individual plaintiffs are unaware of their claims and because of the small incentives for bringing individual FDCPA claims, the Court finds that class certification would be superior to any alternative, notwithstanding the possibility of a de minimis class recovery.

In sum, the Court concludes that Plaintiff has demonstrated that class certification is appropriate under Rule 23(b)(3).

### C. Rule 23(b)(2) Injunctive or Declaratory Relief

Plaintiff seeks to certify a "hybrid" class under Rule 23(b)(3) and Rule 23(b)(2). As discussed above, the Court concludes that Plaintiff has satisfied the requirements for certification of a damages class under Rule 23(b)(3). The Court now addresses whether Plaintiff has satisfied the requirements for an injunctive or declaratory relief class under Rule 23(b)(2).

As a threshold matter, Defendants dispute whether Plaintiff may seek declaratory relief under the FDCPA. While the Ninth Circuit has not addressed the issue, every circuit court that has considered this question has concluded that private litigants may seek damages but not injunctive and declaratory relief under the FDCPA. *See Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004) ("Because the [FDCPA] explicitly provides declaratory and equitable relief only through action by the Federal Trade Commission, we believe the different penalty structure demonstrates Congress's intent to preclude equitable relief in private actions."); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (holding in class action context that "all private actions under the Fair Debt Collection Practices Act are for damages"); *Sibley v. Fulton DeKalb Collection Servs.*, 6778 F.2d 830, 823 (11th Cir. 1982) ("[E]quitable relief is not available to an individual under the civil liability section of the [FDCPA]."). The Second and Fifth Circuits have not squarely addressed the issue, but have noted that the other circuits and many district courts have concluded that equitable relief is unavailable to private litigants under the FDCPA. *See Hecht v. United Collection Bureau, Inc.*, 691, F.3d 218, 223 n.1 (2d Cir. 2012) ("We do not here decide whether the FDCPA permits private plaintiffs to seek injunctive relief because the issue is not squarely presented, but we note that every federal appeals court to have considered the question has held that it does not."); *Bolin v. Sears, Roebuck & Co*, 231 F.3d 970, 977 (5th Cir.

16
Case No.14-CV-00735-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

2000) ("We note, however, that although this circuit has not definitively ruled on the issue, courts uniformly hold that the FDCPA does not authorize equitable relief.").

Plaintiffs cite various district court cases certifying Rule 23(b)(2) classes or hybrid 23(b)(2) and 23(b)(3)under the FDCPA, but the Court notes that none of those decisions actually concluded that the FDCPA authorizes any form of relief other than damages for private litigants. *See* Reply at 9–10 (citing; *Bogner*, 257 F.R.D. at 534; *Schwarm v. Craighead*, 233 F.R.D. 655, 663 (E.D. Cal. 2006); *Hunt*, 241 F.R.D. at 512–13; *Gonzales v. Arrow Fin. Servs., LLC*, 233 F.R.D. 577, 582–83 (S.D. Cal. 2006), *aff'd on other grounds*, 660 F.3d 1055 (9th Cir. 2011); *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 596 (E.D. Cal. 1999); *Bracamonte v. Eskanos & Adler, et al.*, No. 03-1821, 2004 WL 1146624, at *4–5 (N.D. Cal. May 7, 2004)).[5]

To the contrary, cases cited by Plaintiff that actually discuss the availability of equitable relief under the FDCPA noted that the FDCPA does not provide for injunctive relief. *See del Campo*, 254 F.R.D. at 583("Plaintiffs fully concede that injunctive relief is not a remedy under the FDCPA. (Reply at 6.) Injunctive relief, however, is authorized under the [California Unfair Business Practices Act]."); *Gammon v. GC Servs. Ltd. Partnership*, 162 F.R.D. 313, 329 (N.D. Ill. 1995) ("[T]his Court agrees with the conclusion in the above cases that injunctive relief is not available to [plaintiff] under the FDCPA. [Plaintiff] is therefore left with his claims for declaratory relief and statutory damages."); *Mann v. Acclaim Fin. Servs.*, Inc., 232 F.R.D. 278, 285–86 (S.D. Ohio 2003) ("[A]s a general matter, injunctive relief is not authorized in FDCPA cases. However, corresponding declaratory relief has been allowed in FDCPA cases."); *Tedrow v. Cowles*, No. 6-637, 2007 WL 2688276, at *8–9 (S.D. Ohio Sept. 12, 2007) (citing *Mann*, 232 F.R.D. at 285–86). The cases Plaintiff relies on, therefore, either involve a different statutory basis for injunctive relief, *see del Campo*, 254 F.R.D. at 583, or the courts concluded that the FDCPA provides for damages and declaratory relief but not injunctive relief. *Del Campo* is distinguishable, as there is

---

[5] Plaintiff string cites several other cases in her reply on page 10, footnote 42. With the exception of cases specifically distinguished above, none of the other cases address the availability of equitable remedies under the FDCPA and it appears the parties in the string cited cases did not brief or raise the issue of what remedies are available under the FDCPA.

17
Case No.14-CV-00735-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    no California Unfair Business Practices Act claim here and thus no alternative statutory basis for

2    equitable relief,[6] and the Court finds the remaining authority unpersuasive.

3          Neither Plaintiff nor these decisions explain why the FDCPA's explicit provision of a

4    damages remedy to private litigants would preclude injunctive relief but somehow allow

5    declaratory relief. In the absence of controlling Ninth Circuit authority, and in light of the uniform

6    agreement by the other circuits, the Court concludes that neither injunctive nor declaratory relief is

7    available to a private litigant under the FDCPA. As the Third Circuit explained in *Weiss*, the

8    FDCPA "contains no express provision for injunctive or declaratory relief in private actions." 385

9    F.3d at 341. Instead, the FDCPA provides only for damages and counsel fees as remedies in

10   private actions. *Id.* In contrast, in administrative enforcement actions brought by the Federal Trade

11   Commission, the Commission may pursue injunctive and declaratory relief. *Id.* (citing 15 U.S.C. §

12   16921). In light of this separate statutory scheme for enforcing the FDCPA, the Third Circuit

13   concluded that Congress did not intend to provide private litigants with any remedy other than the

14   one that Congress expressly provided: damages and fees. *See id.* The Court agrees, and therefore

15   concludes that Plaintiff cannot seek declaratory relief under the FDCPA. *See also Varnado v.*

16   *Midland Funding LLC*, 43 F. Supp. 3d 985, 993 (N.D. Cal. 2014) (dismissing requests for

17   declaratory and injunctive relief because "[r]emedies for claims made under the FDCPA are

18   limited to damages, attorney's fees and costs"); *Wyatt v. Creditcare, Inc.*, No. 04–3681–JF, 2005

19   WL 2780684, at *3 (N.D. Cal. Oct. 25, 2005) ("[Plaintiff] is no longer entitled to injunctive or

20   declaratory relief . . . given that FDCPA remedies are limited to damages, attorney's fees and

21   costs.").

22         Moreover, the Court also notes that even if Plaintiff could state some basis for her

23   declaratory relief claim, it is not evident that any immediate or real controversy exists. Declaratory

---

[6] Plaintiff does not argue that declaratory or injunctive relief is available under the RFDCPA. Other courts have concluded that the RFDCPA only provides for damages, attorney's fees, and costs. *See Varnado*, 43 F. Supp. 3d at 993 (citing Cal. Civ. Code §§ 1788.30 and 1788.17); *Wyatt*, 2005 WL 2780684, at *3; *Ohlendorf v. Am. Home Mortgage Servicing*, 279 F.R.D. 575, 584–85 (E.D. Cal. 2010)).

relief, like all other claims, requires that a party demonstrate an actual "case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983). Plaintiff has failed to allege, much less produce any evidence that Plaintiff is likely to receive an allegedly illegal collection letter from Defendants again. Plaintiff's proposed class, by definition, is limited to Defendants' past conduct. *See* Mot. at ("[P]ersons . . . to whom PERSOLVE sent, or caused to be sent, a notice in the form of Exhibit "1" on behalf of STRIDE CARD . . . during the period one year prior to the date of filing this action through the date of class certification."). Furthermore, Plaintiff concedes that Defendants no longer use the form collection letter at issue. *See* Reply at 11; Opp. at 12–13; *see also Gold*, 2014 WL 5026270, at *9–10 (finding that "declaratory judgment would be moot because [defendants] have stopped using the letter at issue in this [FDCPA] litigation"). Where, as here, Plaintiff's FDCPA and RFDCPA claims will be resolved on the merits through either dispositive motions or trial, and there is no risk of injury absent declaratory relief, the Court is not persuaded that declaratory relief is appropriate or necessary. *See, e.g.*, *Tirabassi v. Chase Home Finance, LLC*, No. 14-8790, 2015 WL 1402016, at *10–11 (C.D. Cal. Mar. 24, 2015) ("[A] federal court may decline to consider a claim for declaratory relief where the substantive lawsuit will resolve the issues raised by the claim for declaratory relief.").

The Court therefore denies Plaintiff's request to certify a class pursuant to Rule 23(b)(2).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for class certification. Plaintiff has satisfied the requirements of Rules 23(a) and 23(b)(3), and the Court CERTIFIES the following Rule 23(b)(3) class:

> (i) all persons with addresses in California (ii) to whom PERSOLVE sent, or caused to be sent, a notice in the form of Exhibit "1" on behalf of STRIDE CARD (iii) in an attempt to collect an alleged debt originally owed to Wells Fargo Bank, N.A. (iv) which was incurred primarily for personal, family, or household purposes, (v) which were not returned as undeliverable by the U.S. Post Office (vi) during the period one year prior to the date of filing this action through the date of class certification.

The Court APPOINTS Plaintiff Sandra Jacobson as the class representative, and Fred Schwinn of

19
Case No.14-CV-00735-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1  the Consumer Law Center, Inc., Raeon Roulston of the Consumer Law Center, Inc., and Randolph

2  Bragg of Horwitz, Horwitz & Associates, Ltd. as class counsel. The Court DENIES Plaintiff's

3  motion for class certification of a hybrid class under Rule 23(b)(2) and Rule 23(b)(3).

**IT IS SO ORDERED.**

Dated: June 4, 2015

_____
LUCY H. KOH
United States District Judge